UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ELSIE ESTEFANIA,

                Plaintiff,

    -against-

**OPINION & ORDER**
CV-03-3305(SJF)

ANTHONY LA MARCO, ATLANTIC EXPRESS
TRANSPORTATION CORP. and LOCAL 1181,
AMALGAMATED TRANSIT UNION, AFL-CIO,

                Defendants.
----------------------------------------------------------X

FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT E.D. N.Y.
★ APR 18 2005 ★
P.M. _____
TIME A.M. _____

FEUERSTEIN, J.

Elsie Estefania (plaintiff) commenced this employment discrimination action on July 1, 2003 against defendants Anthony LaMarco (LaMarco), Atlantic Express Transportation Corp. (Atlantic Express)(collectively, the Atlantic Express defendants), and Local 1181, Amalgamated Transit Union, AFL-CIO (the union), alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq.* (ADA). The Atlantic Express defendants now move pursuant to, *inter alia*, Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of plaintiff's disability and sexual orientation discrimination claims as against them, and for dismissal of all claims as against LaMarco. The union moves pursuant to, *inter alia*, Rule 12(b)(6) for dismissal of plaintiff's complaint in its entirety as against it. For the reasons stated herein, defendants' motions are granted.

1

I.  BACKGROUND

   A.  Factual Background[1]

Plaintiff alleges that in or about September 2000, she commenced employment with Atlantic Express, which provides school bus services to New York City children, as a bus driver. (Affidavit of Elsie Estefania dated February 3, 2003 [Plf. Aff.], ¶ 1). In January 2001, plaintiff transferred to the Jamaica Yard, where Susan Rice (Rice) was the terminal manager. (Id.). In October 2001, plaintiff became a member of the union. (Plf. Aff., ¶ 2).

Plaintiff alleges that on March 27, 2002, prior to the Easter school recess, Rice excused her from work on the morning of April 8, 2002 as "a reward" for covering another driver's run. (Id.). During the Easter vacation, Rice was terminated and defendant Anthony LaMarco (LaMarco) became her immediate supervisor. (Id. at ¶¶ 1, 4).

On April 8, 2002, at 6:00 a.m., someone from Atlantic Express called plaintiff's house and told her daughter that plaintiff had to report to work that morning. (Id. at ¶ 4). According to plaintiff, she called Atlantic Express back and told LaMarco that Rice had told her that she only had to report to work that afternoon. (Id. at ¶ 5). Plaintiff maintains that LaMarco told her that she had to report to work immediately and then hung up. (Id.). Plaintiff alleges that she immediately called back and told an unidentified dispatcher that she was "calling out" for the morning because she was unable to perform her driving duties safely, since she had just gone to bed only two hours before the telephone call. (Id.). According to plaintiff, when she arrived at

---

[1] As is required on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the factual allegations in the complaint and the affidavit attached to the complaint or incorporated by reference therein, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this court.

2

work for the afternoon run, LaMarco told her to go home and that she was suspended for the rest of the week. (Id. at ¶ 6).

Plaintiff alleges that she subsequently spoke with LaMarco's boss, Charles Butera (Butera), in the presence of the union shop steward "Mickey," and complained about the suspension and LaMarco's prior harassment of her. (Plf. Aff., ¶ 7). Plaintiff alleges that she also contacted the Atlantic Express sexual harassment department a couple of days later and complained to the safety director, Wayne Immerman (Immerman), about LaMarco. (Plf. Aff., ¶ 8).

Plaintiff alleges that on April 9, 2002, she reported to work as usual and LaMarco reassigned her to a "handicap" run and gave her a van that "malfunctioned too many times," causing her to be late for the run. (Plf. Aff., ¶ 9). According to plaintiff, when she complained to LaMarco about the van, he told her to go to the mechanic, but while the mechanic was fixing the van, Jasmine Tucker (Tucker), LaMarco's assistant, yelled at her for still being in the yard. (Id.).

Plaintiff maintains that in 2001 and 2002 she was not given four shirts to which she was entitled. (Plf. Aff., ¶ 10). Plaintiff alleges that she complained to the union, and specifically Paul Mandalone (Mandalone), *inter alia*, about the shirts and LaMarco. (Plf. Aff., ¶ 11).

Plaintiff claims that on an unknown date in June 2002, the van did not start when she reported to work, so she took it to the mechanic, who got the van running and told her to return it after the morning run. (Plf. Aff., ¶ 12). Plaintiff maintains that at approximately 9:00 a.m., after she completed the morning run and as she was dropping off the escort, Carla Knight (Knight), the van broke down in the middle of the road on Linden Boulevard. (Id.). Plaintiff alleges that

3

Knight called Atlantic Express on her cell phone and relayed the exact address where the van had broken down. (Id.). According to plaintiff, approximately two hours later, she contacted Atlantic Express herself and asked Tucker why no one had appeared. (Id.). Plaintiff maintains that Tucker told her to "stand by" and that someone was coming. (Id.). Plaintiff alleges that at approximately 12:00 noon, another driver who was passing by stopped and called the Atlantic Express base giving the exact location of the broken down van. (Id.). According to plaintiff, she was again told to "stand by." (Id.). Plaintiff maintains that at approximately 12:30 p.m., she again called Atlantic Express and spoke to an unidentified assistant who indicated that he would relay her message. (Id.). Plaintiff maintains that at approximately 1:00 p.m., she called the union office, gave them the exact location of the van, and asked them to call the Atlantic Express base with the location. (Id.). Plaintiff alleges that close to 2:00 p.m., she again called the union and gave someone else the exact location of the van. (Id.). Plaintiff maintains that at approximately 2:15 p.m., Knight returned and allowed her to use her cell phone to call the Board of Education, which contracts with Atlantic Express. (Id.). According to plaintiff, she spoke with Josephine Medina (Medina) and advised her that she was filing harassment charges against LaMarco. (Id.). Plaintiff maintains that at approximately 3:40 p.m., the mechanic and driver finally arrived at the correct location of the broken down bus. (Id.).

Plaintiff maintains that in the beginning of July 2002, ~~during the summer session,~~ LaMarco kept her on stand-by and taking inventory while other drivers with less seniority, such as Kowall Persad (Persad), were given shuttle runs making overtime pay. (Plf. Aff., ¶ 13). According to plaintiff, she was not given a run until three weeks after summer school had ended. (Id.).

4

Plaintiff alleges that in the beginning of August 2002, she reported to work as usual at 6:50 a.m. and LaMarco suspended her for the day because he told her that she was supposed to be at the yard at 6:00 a.m. and that he had had a run for her at that time. (Plf. Aff., ¶ 14). Plaintiff maintains that she immediately complained to the shop steward "Walter," and questioned him as to why Mr. Galeano, an employee who had more seniority than her, and, thus, "had to have been given a run before [plaintiff]," was still at the yard when she arrived at 6:50 a.m. (Id.). In addition, plaintiff maintains that Maria Rodriguez, an employee with less seniority than plaintiff, arrived at the yard at approximately the same time as plaintiff, yet LaMarco did not send her home. (Id.).

Plaintiff alleges that shortly thereafter, she complained to the union about her suspension and LaMarco's continued harassment. (Plf. Aff., ¶ 15). According to plaintiff, the secretary told her that nobody was available to help her because they were all on vacation until September, and she was not asked to leave her name, contact information, or a message. (Id.). Plaintiff maintains that union dues were taken out of her check all summer, notwithstanding the union's unavailability to help her. (Id.).

Plaintiff alleges that in August 2002, when employees pick new runs, she picked a run which took her almost four hours to complete. (Plf. Aff., ¶ 16). Plaintiff maintains that LaMarco would call her every day to rush her through the run because he did not want to pay her overtime. (Id.). Plaintiff also maintains that LaMarco further harassed her by telling her that other drivers could complete the run more quickly and that she was required to return the bus to the yard after the morning run each day when other drivers with less seniority, particularly Ricardo Feliciano (Feliciano), were not required to return their buses to the yard between runs. (Id.). Plaintiff

contends that after she spoke with Feliciano, she decided not to bring her bus back to the yard. (Id.).

Plaintiff alleges that in September 2002, LaMarco denied her request to take a day off, but she took the day off anyway with her apologies. (Plf. Aff., ¶ 17).

Plaintiff alleges that on October 2, 2002, she faxed a five page letter to Immerman detailing LaMarco's harassment of her. (Plf. Aff., ¶ 18).

Plaintiff alleges that on October 3, 2002, a hearing was held because she had contacted the Board of Education during the June 2002 "broken down van" incident. (Plf. Aff., ¶ 20). According to plaintiff, Butera tried to intimidate her, warned her never to call the Board of Education again, and interrupted her every time she tried to defend herself, but he also told her that he had received her complaints about LaMarco's harassment of her and that it would be taken very seriously. (Id.). Plaintiff maintains that on that same date, she gave Walter a letter complaining about LaMarco's harassment for him to present to the union and to file a grievance. (Plf. Aff., ¶ 21).

Plaintiff alleges that from October 16, 2002 through November 20, 2002, LaMarco assigned her to five school trips in place of other drivers assigned by the Board of Education, and for which she was not paid extra. (Plf. Aff., ¶ 22). According to plaintiff, school trips "take up the time [drivers] would generally take resting at home so drivers do not look forward to [them]." (Id.). Plaintiff refused to do at least one trip to which she was assigned and contacted Walter to file a grievance with the union about the excessive school trip assignments. (Id.). In addition, plaintiff alleges that she called the Board of Education to find out how the day trips are supposed to be assigned and Medina told her that the assignment of trips was within the employer's

discretion. (Id.). Plaintiff alleges that when she questioned Medina as to why the routes were specified in the work order sheets for other drivers, Medina connected her to different people, but she never received a straight answer. (Id.).

Plaintiff alleges that on October 28, 2002, she was asked to report to another hearing because she had again contacted the Board of Education. (Plf. Aff., ¶ 23). According to plaintiff, Butera informed her that he did not want her contacting the Board of Education, that he had previously advised her so, and that this would be her last warning, and asked Mandalone to check with a lawyer about plaintiff's future termination if she contacted the Board of Education again. (Id.). Plaintiff maintains that no hearing was ever held regarding her complaints about LaMarco's abuse of her. (Id.).

Plaintiff alleges that on Friday, November 15, 2002, LaMarco assigned her to another school trip, but her right shoulder started hurting her during her morning run so she called LaMarco and told him that she was not feeling well and was going home for the day. (Plf. Aff., ¶ 24). According to plaintiff, she went to the doctor that same day, at which time she was diagnosed with bursitis and was restricted to working only the morning and afternoon runs for two months. (Id.). According to plaintiff, since she was not assigned a trip the following Monday, she did not turn in the doctor's note. (Id.).

Plaintiff also maintains that on November 15, 2002, she requested that the union provide her with a copy of the collective bargaining agreement, which did not receive. (Plf. Aff., ¶ 28).

Plaintiff alleges that on November 20, 2002, she was assigned to another school trip, but she did not look at her schedule until she was on the bus. (Plf. Aff., ¶ 25). According to plaintiff, after she completed her regular morning run, she called Walter and told him that she

7

could not perform the school trip because she had the doctor's note restricting her duties to only the morning and afternoon runs. (Id.). Plaintiff alleges that Walter told her it was "okay", and that she performed the afternoon run on that date. (Id.).

Plaintiff alleges that on November 21, 2002, she performed the morning run, but when she went to pick up the bus for the afternoon run it was missing. (Plf. Aff., ¶ 26). According to plaintiff, when she contacted Atlantic Express about the missing bus, Tucker told her the bus had been picked up because plaintiff had been placed out of service due to her medical restriction. (Id.).

Plaintiff alleges that on November 22, 2002, she spoke with LaMarco about filing workers' compensation papers and that LaMarco gave her the papers, which she took to her car, completed and personally handed right back to LaMarco after Walter made copies for the union. (Plf. Aff., ¶ 27). Plaintiff alleges that she never received compensation benefits because LaMarco claimed that he never received the compensation papers. (Id.).

Plaintiff further alleges that on January 23, 2003, she sent a copy of the compensation papers to Jeffrey Kelch (Kelch), whose position she does not identify, together with the first doctor's note and a subsequent doctor's note indicating the probable date for her return to work as February 24, 2003. (Plf. Aff., ¶ 27). According to plaintiff, she asked Kelch where Atlantic Express was holding its "spring refreshers" and when, where, and what time she would have to pick a run to begin upon her return to work. (Id.). Plaintiff maintains that Kelch told her that she needed to contact the union, but nobody was available at the union when she contacted it. (Id.). According to plaintiff, she left her contact information and messages for the union. (Id.).

Plaintiff alleges that when she arrived at the "run pick", it was already over. (Plf. Aff., ¶

8

27). Plaintiff maintains that when she asked Walter whether she could pick a run, he initially told her that she needed a doctor's note with a return date, but after she informed him that she had one, he told her that she could only pick with other people who are also on disability or compensation, and that she was at the bottom of that list. (Id.). According to plaintiff, the union picked a run for her, but refused to give her a copy of the run before she returned to work, which she wanted so that she could perform a "dry run" for safety purposes. (Id.). Plaintiff alleges that she told Walter that she would file a grievance over not being told when the pick was and not being allowed to pick with the other drivers even though she had a doctor's note with a return date to work on it. (Id.).

Plaintiff's employment was terminated on March 4, 2003.


B.      Procedural History

Plaintiff filed a charge of discrimination dated March 7, 2003 against Atlantic Express, LaMarco and the union with the Equal Employment Opportunity Commission (EEOC), alleging sexual harassment, a hostile work environment, and retaliation in violation of Title VII. (Affidavit of Jeffrey D. Pollack [Pollack Aff.], Exhibit [Ex.] A). Specifically, plaintiff alleged the following in the EEOC charge:

> "I Elsie Estefania have been discriminated against in violation of my civil rights as set forth under Title VII * * * on the basis of sexual harassment and retaliation.
>
> I am a (Lesbian) Puerto Rican female and employed as a bus driver by [Atlantic Express]. My supervisor [LaMarco] has subjected me to a hostile work environment from 4/01/02 to present. (Deleted). I was denied all rights and privileges of employment by the above individual. During the above time I was a victim of discrimination,

9

sexual harassment and illegal employment practices. When I
complained about the above practices, I was targeted by my
supervisor and employer for retaliation."

(Pollack Aff., Ex. A).

On April 18, 2003, the EEOC issued a Right to Sue Letter. The EEOC found that the facts alleged by plaintiff failed to state a claim under any of the statutes enforced by it.

On July 1, 2003, plaintiff *pro se* commenced the instant action against Atlantic Express, LaMarco and the union pursuant to Title VII and the ADA, alleging discrimination based on gender, sexual orientation and disability, and retaliation.

The Atlantic Express defendants now move pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure to dismiss (1) plaintiff's disability and sexual orientation discrimination claims as against Atlantic Express; and (2) plaintiff's complaint in its entirety as against LaMarco. The union also moves pursuant to Rules 12(b)(1), (2) and (6) to dismiss plaintiff's complaint in its entirety as against it[2].

II. DISCUSSION

    A.    Standard of Review

        1.    Fed. R. Civ. P. 12(b)(1)

Defendants move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to

---

[2] Although defendants indicate that their motions are being brought, in part, pursuant to Rule 12(b)(2), none of them make any arguments in support of dismissal for lack of personal jurisdiction. Accordingly, defendants have abandoned so much of their motions which seek dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2).

dismiss the complaint for lack of subject matter jurisdiction. "In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1055 (2d Cir.1993), cert. denied, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994) (quoting Goldman v. Gallant Sec., Inc., 878 F.2d 71, 73 [2d Cir.1989]).

### 2. Fed. R. Civ. P. 12(b)(6)

Defendants also move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim. A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003)(internal quotations and citations omitted). In deciding a motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); New v. Ashcroft, 293 F.Supp.2d 256, 257 (E.D.N.Y. 2003). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt, 340 F.3d at 101 (internal quotations and citations omitted). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. See, New, 293 F.Supp.2d at 257 (citing Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 [2d Cir. 1995]). The Court must limit itself to the facts alleged in the

11

complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Spencer Trask Software and Information Servs. LLC v. RPost Intl. Ltd., No. 02 Civ. 1276, 2003 WL 169801, at * 4 (S.D.N.Y. Jan. 24, 2003).

B.   Failure to Exhaust Administrative Remedies[3]

Exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to filing a Title VII action in federal court. See, Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). Similarly, claims pursuant to the ADA must be included in an EEOC charge as a precondition to bringing such claims in a district court. See, Le Prevost v. New York, No. 03 Civ. 2544, 2004 WL 32860, at * 7 (S.D.N.Y. Jan. 6, 2004); Sussle v. Sirina Protection Systems Corp., 269 F.Supp.2d 285, 314 (S.D.N.Y. 2003).

Claims that were not asserted in an EEOC charge may only be pursued in a federal action if they are reasonably related to those that were filed with the agency. Deravin, 335 F.3d at 200; Legnani, 274 F.3d at 686. There are three types of reasonably related claims: (1) claims that fall "within the scope of the EEOC investigation which can reasonably be expected to grow out of

---

[3] In opposition to defendants' motions, plaintiff merely identifies witnesses to the alleged discrimination and, in effect, contends that the motions are premature and that she should be afforded an opportunity to conduct discovery. In addition, plaintiff submits one affidavit from a purported witness to the alleged discrimination, which is not properly considered on a motion to dismiss pursuant to Rule 12(b)(6).

12

the charge of discrimination;" (2) claims that allege retaliation arising from the filing of an EEOC charge; and (3) claims that allege "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Butts v. City of New York Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1402-1403 (2d Cir. 1993), superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir. 1998). The focus should be on the factual allegations contained in the EEOC charge itself. Deravin, 335 F.3d at 201; Barriera v. Bankers Trust, No. 98 Civ. 3641, 2003 WL 22387099, at * 4 (S.D.N.Y. Oct. 20, 2003).

1.  Disability Discrimination

Plaintiff did not allege discrimination based on disability, or even identify a disability, in the EEOC charge. Accordingly, plaintiff may only maintain her disability discrimination claims if they are "reasonably related" to her claims in the EEOC charge.

Of the three types of "reasonably related" claims, only the first is relevant to plaintiff's failure to allege discrimination based on disability in her EEOC charge. However, plaintiff's EEOC charge, which alleges discrimination based on sex, retaliation and a hostile work environment created by LaMarco and Atlantic Express only, could not reasonably be expected to have triggered an investigation into her claims of discrimination based on disability, particularly because plaintiff does not even make reference to a disability in the administrative filing. See, e.g. Culbertson v. Charosa Foundation Corp., No. CV-03-3742, 2004 WL 502925, at * 4 (E.D.N.Y. Jan. 7, 2004)(finding that plaintiff's claims of age, race, and religious discrimination were not reasonably related to her administrative complaint alleging gender discrimination only,

13

where neither the face nor substance of the administrative complaint suggested racial, religious, or age discrimination, and plaintiff did not even note her race, religion, or age in the administrative complaint); O'Neal v. State Univ. of New York Health Sci. Ctr. Brooklyn, No. CV-01-7802, 2003 WL 1524664, at * 3 (E.D.N.Y. Mar. 24, 2003)(finding that plaintiff's race discrimination claim was not reasonably related to the administrative complaint alleging gender discrimination only, where she did not charge race discrimination, or even allege her race, in the administrative filings). Accordingly, plaintiff's claims of discrimination based on disability are dismissed pursuant to Rule 12(b)(6)[4] for her failure to exhaust her administrative remedies with respect to those claims[5].

2. Claims against the Union

The union contends that the allegations of discrimination, hostile work environment and retaliation in plaintiff's EEOC charge were alleged exclusively against LaMarco, and there were no specific allegations against the union or its representatives. In addition, the union contends that the only allegations against it in the complaint is that it did not intervene to resolve plaintiff's issues with LaMarco, and it aided LaMarco in trying to discredit plaintiff, retaliate

---

[4] Although defendants move for dismissal of the complaint pursuant to both Rule 12(b)(1) and 12(b)(6), dismissal pursuant to Rule 12(b)(1) is inappropriate because a failure to exhaust administrative remedies does not deprive the court of subject matter jurisdiction. See, Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2002); O'Neal, 2003 WL 1524664, at * 4. Rather, dismissal of plaintiff's claims for failure to exhaust administrative remedies is made pursuant to Rule 12(b)(6).

[5] Although there are regulatory or equitable exceptions to the exhaustion requirement, see, e.g., German v. Pena, 88 F.Supp.2d 216, 219 (S.D.N.Y. 2000), plaintiff does not contend that any such exception is applicable here.

against her, discriminate against her, and terminate her. According to the union, "[n]othing remotely resembling [that] claim" against it was included in the EEOC charge. (Affidavit of Ronald A. Straci [Straci Aff.], ¶ 9).

The mere filing of an administrative charge is not itself sufficient to satisfy the exhaustion requirement; rather, the plaintiff must have raised in the administrative filing all claims she alleges in the complaint in federal court. See, O'Neal, 2003 WL 1524664, at * 4. Moreover, since the claims plaintiff now makes against the union in her complaint bear no factual or legal connection to the allegations she asserted in the EEOC charge, they would not naturally have been addressed in the course of an EEOC investigation. Accordingly, plaintiff's allegations in the union are not "reasonably related" to the charges she made in the administrative filing, which were limited solely to the discrimination, retaliation and hostile work environment created by LaMarco and Atlantic Express. See, e.g. Holtz v. Rockefeller & Co., 258 F.3d 62, 84 (2d Cir. 2001)(holding that claims are not exhausted where they bear no factual or legal relation to allegations in the EEOC charge and would not naturally be addressed in the course of an EEOC investigation). Thus, the claims against the union are dismissed in their entirety pursuant to Rule 12(b)(6) for plaintiff's failure to exhaust administrative remedies.

C. Sexual Orientation Discrimination

Title VII does not afford a cause of action for discrimination based upon sexual orientation. See, Simonton v. Runyon, 232 F.3d 33, 35-36 (2d Cir. 2000); see also Dawson v. Bumble & Bumble, 398 F.3d 211, 217-218 (2d Cir. 2005)(holding that Title VII does not recognize homosexuals as a protected class). Accordingly, to the extent that plaintiff is claiming

15

that she was discriminated against based upon her sexual orientation, those claims are dismissed as outside the reach of Title VII.

D. Claims against LaMarco

Individuals are not subject to liability under Title VII. See, Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000). Accordingly, plaintiff's remaining Title VII claims against LaMarco are dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

III. CONCLUSION

Defendants' motions to dismiss pursuant to Rule 12(b)(6) are granted, plaintiff's Title VII and ADA claims against La Marco and the union are dismissed in their entirety, and plaintiff's disability and sexual orientation discrimination claims are dismissed as against Atlantic Express.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 31, 2005
Central Islip, New York

Copies to:

ELSIE ESTEFANIA, *pro se*
89-09 120th Street
Richmond Hill, New York 11418

16

MINTZ & GOLD, LLP
444 Park Avenue South
New York, New York 10016

HAYDEN, STRACI & COOPER
17 Battery Place, 6th Floor
New York, New York 10004